**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SB 295320)
Marcelo Barros (SB 339069)
Natalie Felsen (SB 353462)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
michael.burshteyn@gtlaw.com

Jordana R. Sternberg (*pro hac vice forthcoming*)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: (678) 553-2100
Jordana.Sternberg@gtlaw.com

Jennifer Bartlett (*pro hac vice forthcoming*)
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone: 214.665.3600
jennifer.bartlett@gtlaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JEREMY NIXON, | CASE NO. |
| Plaintiff | **JEREMY NIXON'S COMPLAINT AGAINST ROCKY YU AND AGI HOUSE, LLC** |
| v. | |
| ROCKY YU and AGI HOUSE, LLC. | **JURY TRIAL DEMANDED** |
| Defendants. | |

## INTRODUCTION

1.     Jeremy Nixon ("Nixon") brings this Complaint against Rocky Yu ("Yu") and AGI House, LLC ("Yu's LLC") to stop Yu's escalating campaign to hijack the intellectual property, community, goodwill, and financial opportunity that Nixon cultivated for years to develop the AGI House brand and enterprise.

2.     Nixon is the founder of a forward-thinking experiment in community-driven innovation—AGI House.  AGI House is a space where leading minds can exchange ideas, prototype solutions, and explore the potential of advanced artificial intelligence in an open, collaborative environment.

3.     When founding AGI House, Nixon sought not just to foster technical achievement, but to cultivate a culture of thoughtful engagement around the future of AI technologies.

4.     This experiment first took physical shape in a house in San Francisco that Nixon announced in December 2021.  Nixon and Andrej Karpathy (who was the inventor of Tesla autopilot and co-founder of OpenAI) leased this eight-bedroom house to create a hub, initially dubbed "NeoGenesis," where like minds interested in artificial intelligence could gather, live, work, and collaborate.

5.     In September, 2022, Nixon and Karpathy decided to rebrand the house and its events as "AGI House."  Nixon announced the rebrand, created an AGI House website, established an AGI House Slack channel, and began inviting the cream-of-the-crop in the AI world to participate in the AGI House community.  These included founders of major AI companies, such as Perplexity, Anthropic, OpenAI, and others, as well as creators of groundbreaking AI algorithms.

6.     In early 2023, with the success of AGI House flourishing, Nixon brought in defendant Yu as a house manager, to handle operations such as collecting rent, managing the cleaning staff, and implementing AGI House events.

7.     Unbeknownst to Nixon, who had entrusted Yu with assisting AGI House operations, Yu began surreptitiously registering the AGI House brand to himself.

8.     Yu registered a different "agihouse" website, applied for trademarks, incorporated the defendant LLC in the AGI House name, and generally began holding himself out as the founder of the AGI House idea and community Nixon created.

9.     The LLC Yu created without authorization has even attempted to sue Nixon for trademark infringement,[1] even though Nixon is the first and senior user and the rightful owner of the AGI House mark.

10.     In short, instead of helping the founder to run the AGI House operations, as agreed, Yu recognized the lucrative prospects Nixon had cultivated and set about commandeering them for himself.

11.     Although Yu initially acknowledged that Nixon created the AGI House, and even publicly thanked Nixon for it, this narrative began to change as Yu took steps to snatch the brand and its following from Nixon, first by copying the AGI House domain name (which Nixon had already purchased as a ".ai" and Yu registered as a ".org"), then by registering AGI House, LLC (an entity Yu owns and controls), then through Yu's attempt to register the AGI House mark and brand for himself.  Yu also changed the Twitter account, using the administrative privileges he was entrusted with, to take over the account and lock Nixon out of it.  Yu changed the Twitter handle to .org, even though it was the same account previously named with a .ai extension—just like he did with the website.

12.     Yu now holds himself out publicly as the founder and creator of AGI House. While Nixon was not aware of Yu's activities and still remains unaware of the full extent of his misconduct, Nixon's investigation has uncovered escalating and concerning efforts by Yu to misappropriate business and economic opportunities away from Nixon through Yu's misuse of the AGI House mark.

---

[1] *AGI House, LLC v. Nixon*, No. 3:250cv095773-WHO.  Although the parties do not fully overlap, the two cases are related.

JEREMY NIXON'S COMPLAINT
CASE NO.

13.     Following Yu's betrayal, Nixon created a new AGI House in San Francisco, even though Yu's conduct has interfered with the creation and scaling of that community.  Nixon's intention and ambition with the new AGI House in SF is the same as his original vision with the AGI House in Hillsborough.

14.     To attempt to siphon profit from Nixon's business and vision, Yu has actively and intentionally spread false information about Nixon's involvement, not only by telling AGI House stakeholders and supporters that Nixon was no longer involved, but also by repeatedly and publicly stating that Nixon's second location, AGI House SF, was unrelated to the AGI House enterprise.

15.     Yu's false statements have caused extensive and costly reputational and financial harm to Nixon.  Due to having been roommates and connected with a multitude of founders behind billion-dollar ventures, Nixon is a venture capital investor.  Yu's conduct has damaged Nixon's ability to both (a) raise limited partner funds for his investment business; and (b) caused multiple lost investment opportunities for Nixon.  Meanwhile, Yu leverages his false association with AGI House to raise his own capital and secure his own investment opportunities.  The lost opportunity Yu has caused Nixon is valued in the hundreds of millions, if not billions, of dollars.

16.     Yu is well-aware of the value that the AGI House mark and brand holds, which is precisely why he misappropriated it and puts himself out as the false-founder of AGI House to this day.

## JURISDICTION

17.     This Court has personal jurisdiction over Yu because, on information and belief, Yu resides in this judicial district, conducts or has conducted business in the State of California and within this judicial district, and the effects of Yu's acts have been felt in this district.

18.     This Court has personal jurisdiction over Yu's LLC because it is a California company having its principal place of business in this judicial district in Hillsborough,

JEREMY NIXON'S COMPLAINT

California, and it conducts or has conducted business, as well as advertised its services, under the AGI House mark in the State of California and within this judicial district, and the effects of those acts have been felt in this district.

19.     This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367.  Nixon's claims are, in part, based on violations of the Lanham Act, as amended, 15 U.S.C. §§ 1051, *et seq*. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

20.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

21.     Because this action concerns intellectual property, it is exempt from the Court's division-specific venue rule pursuant to Civil L.R. 3-2(c) and General Order No. 44 Assignment Plan.

## **PARTIES**

22.     Plaintiff Jeremy Nixon is an individual who resides and does business in San Francisco, California.  Nixon is the founder of AGI House in Hillsborough, California, and he is the senior user of the AGI House mark.  Nixon graduated from Harvard University with degrees in Applied Mathematics, Computer Science, and Economics. Nixon did research at Google Brain, where many of the transformative algorithms in AI were invented, publishing with the inventor of the diffusion model.

23.     Defendant AGI House, LLC is a California limited liability company having its principal place of business in Hillsborough, California.

24.     Defendant Rocky Yu is an individual who resides, on information and belief, in Hillsborough, California.

JEREMY NIXON'S COMPLAINT

# FACTUAL ALLEGATIONS

**A.    Jeremy Nixon creates a novel scientific and technological community.**

25.    Jeremy Nixon has significant history, experience, and recognition as a pioneering technologist, entrepreneur, and community builder in the field of artificial intelligence and machine learning.  From 2017 through 2021, Nixon developed, curated, and ran hundreds of scientific and technological events in Silicon Valley, building the relationships that became AGI House.

26.    Nixon is also the Founder and CEO of Omniscience, an AI company focused on building innovative tools powered by large language models, including systems for generating books and supporting research workflows.

27.    Nixon has also worked as a researcher and engineer on the Google Brain team, where he contributed to advancing machine learning systems and exploring core challenges in the development of more robust and trustworthy AI.

28.    Starting as early as March, 2021, Nixon conceived and worked to initiate and build the co-working hacker community that became known as AGI House.

29.    Initially, Nixon called this idea and community "NeoGenesis."

30.    To establish this community, Nixon leased an eight-bedroom estate at 1868 Floribunda Avenue in Hillsborough, California (the "Floribunda House").  Nixon announced the community and shared an image of the property in a Facebook post on December 31, 2021.

1
2
3
4
5
6
7
8
9
10
11



12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

JEREMY NIXON'S COMPLAINT

ACTIVE 717414624v1

31.    Soon afterward, on January 20, 2022, Nixon signed the lease for the Floribunda House:



32.    Nixon funded the initial rent and security deposit.

CASE NO.

JEREMY NIXON'S COMPLAINT

ACTIVE 717414624v1

33.    NeoGenesis became a visionary hub for AI researchers, technologists, and entrepreneurial thinkers to live, learn, and build together in an atmosphere that blended intellectual curiosity with real-world innovation.

34.    This community Nixon founded swiftly became successful, productive, and popular, hosting events and inventors throughout the first three quarters of 2022.

35.    These events included a housewarming on March 4, 2022, an event called "Back to The Future" on April 8, 2022, the "Future of Consciousness" on June 24, 2022, "The Great Library" on June 12, 2022, "Midnight in Paris" on July 16, 2022, the "Future Forum" on the weekend of August 4-7, 2022, and a Generative Image hackathon in September.

36.    At its core, AGI House represents a forward-thinking experiment in community-driven innovation — a space where leading minds can exchange ideas, prototype solutions, and explore the potential of advanced artificial intelligence in an open, collaborative environment.

37.    In founding it, Nixon sought not just to foster technical achievement, but to cultivate a culture of thoughtful engagement around the future of AI technologies.

38.    In short, Nixon conceived of the AGI House space and community itself and then brought to fruition a space that fostered a unique synergy and energy among innovators and thinkers working together to shape and build the world-changing future of artificial general intelligence.

**B.    Nixon rebrands the community and house as "AGI House."**

39.    In September 2022, Nixon decided to rebrand and expand the NeoGenesis concept into AGI House, a community-centric ecosystem dedicated to accelerating breakthroughs in artificial intelligence.

40.    Under Nixon's leadership, AGI House was widely recognized as a community, fellowship, and co-living space where the brightest and best founders,

ACTIVE 717414624v1
CASE NO.

researchers, and builders worked together to explore, develop, and advance AI technologies.

41.    Nixon pursued the AGI House mission centered on fostering deep collaboration, creative problem-solving, and the responsible growth of the AI ecosystem.

42.    Nixon planned to create additional AGI House communities worldwide, beginning in San Francisco and Cambridge.

43.    Carrying on the foundation Nixon had established with NeoGenesis, AGI House grew into a vibrant hub beloved by innovators, hosting hackathons, intellectual discussions, networking events, and hands-on sessions that connected its members with industry leaders, investors, and emerging startups.

**C.    Nixon's work to create and establish the AGI House mark**

44.    Nixon thought and planned carefully for the rebrand from "NeoGenesis" to "AGI House."

45.    Nixon's notes and documents from October 2022 show his work to brainstorm and implement the rebranding of his concept while continuing the momentum he had already developed through NeoGenesis.

JEREMY NIXON'S COMPLAINT
ACTIVE 717414624v1

46.     On October 18, 2022, Nixon created the following notes about the AGI House brand and concept:



JEREMY NIXON'S COMPLAINT

ACTIVE 717414624v1

47.    On October 20, 2022, Nixon created the following notes



October 20, 2022 at 5:24 PM

AGI House as a series of 5 two-week sprints.

ML from Scratch.
Paths to AGI
AGI Safety
AI Applications
AI Infrastructure for Scale
BUDS for ML (2 week sprint for learning all of the above all at once - hell weeks)


That's it.
Have a co-teacher for it all.
Call

48.    On October 21, 2022, Nixon shared the following "Core Thesis" description with a colleague:



## Core Thesis

AGI house.

- 20 AI hackers, living in the same epic house for 3 months. 20 weekend hackathons, daily dinners with AI royalty, ship code again and again and again.
- Training program for implementing all major machine learning programs.
- Research paper reading & reimplementation group.
- Hackathons focused on every area of AI application. Generative speech. Generative text. Language translation. An opening "how to build front-ends" hackathon to make sure everyone can productize and ship everything they build.
- 12 "safety of pathways to AGI" events. Anthropic / OpenAI Safety team collaborations.

JEREMY NIXON'S COMPLAINT

49.     In furtherance of the rebrand, on October 27, 2022, Nixon purchased rights to the internet domain "agihouse.ai."



50.     On October 31 and November 1, 2022, Nixon continued brainstorming the tagline for the AGI House concept, as follows:

JEREMY NIXON'S COMPLAINT
ACTIVE 717414624v1

51.     On November 2, 2022, Nixon confirmed the rebrand from NeoGenesis to AGI House in a text to Karpathy as follows:



52.     On November 14, 2022, Nixon made a to-do list that included a task described as "Plan a call with Alex around AGI House launch event (Hackathon) on Saturday."



53.     Throughout November 2022, Nixon made online posts announcing new events to be taking place at AGI House. These posts circulated among the many usual attendees to the events hosted by NeoGenesis and beyond.  The relationships Nixon had

JEREMY NIXON'S COMPLAINT

built over years accrued to the AGI House brand and formed the foundation of the AGI House community.

54.    On December 11, 2022, Nixon created the AGI House Slack, which even today has thousands of members:



55.    Nixon also created an AGI House YouTube channel and an AGI House Twitter account.

56.    On December 12, 2022, Nixon created and ran the ChatGPT & Davinci-003 Hackathon under the AGI House brand.



**D.    Yu's initial involvement**

58.    In 2022, the AGI House community had grown so popular and busy that Nixon engaged help to operate it. Specifically, over time, Nixon included a series of house managers in the AGI House community.

59.    These house managers took on operational responsibilities in the house, such as collecting rent and managing the cleaning staff and food orders.

60.    In December, 2022, Nixon's roommate, who was a friend of Yu, suggested Yu as a candidate for the AGI House 'house manager' position.

61.    Trusting Yu could do the job, Nixon decided to offer Yu the house manager position.

62.    On information and belief, Yu does not have significant expertise in artificial intelligence.

63.    On December 3, 2022, Nixon made another to-do list that itself confirms Nixon had the AGI House concept before Yu even entered the scene, as this list includes tasks referencing AGI House before even bringing Yu "on board":

- "get Rocky on board"
- "create a full event series for AGI house for the next 2 months"
- "create an epic AGI house tweetstorm with all the events and fill all of them up simultaneously"



64.    After accepting the house manager position, Yu sent an email to the residents of AGI House on January 20, 2023, acknowledging Nixon as founder:

On Fri, Jan 20, 2023 at 1:14 AM Rocky Yu <rocky@piki.ai> wrote:

Hi All,

Congratulations again, for being part of the AGI house!

First of all, I'd like to thank Jeremy and Andrej, and all prior residents for creating this unique community and laying out the foundation for what we aspired to accomplish.

### F.    Yu's brazen misappropriation of the AGI House mark and its benefits.

65.    Nixon now knows, based on his ongoing investigation, that throughout this period, and despite knowing that Nixon retained ownership, control, and ongoing use of the AGI House mark, Yu made a long-term plan to appropriate the mark and its associated goodwill for himself, without Nixon's consent.

66.    First, on or about March 4, 2023, without informing Nixon, Yu secretly registered "agihouse.org", a website domain that copied the domain Nixon had already registered months earlier.

JEREMY NIXON'S COMPLAINT
ACTIVE 717414624v1

67. Next, in May 2023, approximately six months after Nixon's initial use of the AGI House mark, Yu, again acting surreptitiously and without Nixon's knowledge, incorporated Yu's LLC, appointing himself the sole principal of the entity, which Yu allegedly "fully owns and controls."

68. Then, in January 2024, more than a year after Nixon's first public use of the AGI House mark, Yu covertly filed a USPTO trademark application seeking to register the AGI House mark in his own name. (ECF 27 ¶ 41.)

69. At the time Yu submitted this federal trademark application, he was fully aware that Nixon had been using the AGI House mark continuously since 2022 and that Nixon was the first and senior user—yet Yu made no disclosure to Nixon that Yu was attempting to register the mark for himself and that he was acting solely for his own benefit.

70. Yu had gained access to AGI House, its name, community, and goodwill, only because Nixon had brought him into the project. Yu used this inside knowledge to secretly position himself to claim ownership of the AGI House name and mark, even while Nixon continued operating AGI House openly and publicly.

71. Yu's undisclosed trademark filing has prevented Nixon from securing federal trademark rights in the AGI House mark.

72. Yu and Yu's LLC have used Yu's undisclosed trademark filing to interfere with Nixon's continued use of the AGI House mark.

73.     Yu now holds himself out as the founder of AGI House:[2]







74.     Finally, after initiating his lawsuit, on September 18, 2025—the day before filing his First Amended Complaint—Yu, through Yu's LLC, made yet another

---

[2] https://invent.ai.princeton.edu/events/2025/ai%C2%B2-startup-founders-series-agi-house-its-founding-story-and-mission (last visited 12-16-2025), https://brand-innovators.com/speakers/rocky-yu/ (last visited 12-16-2025)

ACTIVE 717414624v1

undisclosed filing, applying with the California Secretary of State to register the AGI House mark at the state level.

75.     From October 2022 to the present, Nixon has continuously used, controlled, and publicly associated himself with the AGI House mark.  He has attempted to open up new AGI House instantiations, including one in Cambridge, MA.  Yu's conduct, unfortunately, has interfered with these business opportunities and prospective economic relationships.

JEREMY NIXON'S COMPLAINT

76.     Nixon has uncovered details as recently as the last few months that show the extent and scale of Yu's commitment to rewrite the founding story of AGI House and interfere with Nixon's attempts to grow and scale the AGI House community.

77.     Yu, meanwhile, used the misappropriated AGI House brand and equity that Nixon painstakingly built to raise his own tens of millions of dollars venture capital fund. Yu not only raised his own funds on the back of the AGI House name, but he also leveraged it to secure, on information and belief, lucrative investment opportunities. This created a tremendous amount of confusion among Nixon's investors, potential sponsors, and potential investment opportunities.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### FALSE OR FRAUDULENT TRADEMARK REGISTRATION
### (15 U.S.C. § 1120)

78.     Nixon repeats and realleges each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

79.     The trademark application (No. 98350586) by which Defendants registered the trademark for AGI House declares: "To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."

80.     In fact, this declaration was a false representation of a material fact, because at the time Yu made this declaration, on January 10, 2024, Yu was aware that Nixon was using the AGI House mark in commerce, and therefore Yu knew that Nixon had the right to use the mark in commerce and he knew that Yu's use of the AGI House mark was likely to cause confusion or mistake, or to deceive.

81.     In the trademark application he submitted on January 10, 2024, Yu falsely declared that, to the best of his knowledge and belief, no other persons had the right to use

ACTIVE 717414624v1

the AGI House mark in commerce, and that no other persons had the right to use in commerce a mark that is "either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."

82.    On information and belief, Yu made these false statements with the intention of inducing reliance by the USPTO on this declaration and deceiving the U.S. Patent and Trademark Office such that the AGI House mark would advance to registration.

83.    The USPTO reasonably relied on the statements made by Yu in the petition to register the AGI House mark for trademark protection.

84.    Had the USPTO known that Nixon was using the AGI House mark in commerce and that Nixon had been using the AGI House mark prior to any use of the mark by Defendants, and for more than a year prior to the January 10, 2024 trademark application, the USPTO would not have issued U.S. Trademark Registration No. 7582685.

85.    The AGI House mark would not have advanced to registration if Yu had not declared that no other persons had the right to use a mark in commerce that would be likely to cause confusion or mistake, or to deceive.

86.    Yu and Yu's LLC have admitted in court filings that the marks are confusingly similar—they are the same mark.

87.    But because Nixon is the senior user of the AGI House mark, it is actually Defendants' use of the AGI House mark that causes confusion.

88.    Defendants' continuing use of the fraudulently obtained AGI House mark has proximately caused and is continuing to cause damages to Nixon.

89.    The fraudulently obtained AGI House mark has formed the basis of Defendants' cancellation action against Nixon's registration of the mark and has also formed the basis of this action.

90.    Defendants have prevented Nixon from obtaining registration for the AGI House mark because the USPTO has cited Defendants' registration in denying Nixon's

JEREMY NIXON'S COMPLAINT

application to register the AGI House mark, and Defendants have nonetheless maintained that registration and are fighting Nixon over it in pending Trademark Office proceedings.

91.    As a result of the USPTO's reliance on Defendants' material misrepresentations, Nixon has been and continues to be damaged as set forth above.

92.    Defendants' efforts to prevent Nixon from obtaining the benefits of the AGI House mark, and to misappropriate those benefits for itself, have caused and is continuing to cause damages to Nixon.

93.    Because Defendants' registration was obtained fraudulently, and Nixon has incurred damages as a result of the fraudulently procured registration, Nixon is entitled to recover damages from Defendants pursuant to 15 U.S.C. § 1120.

94.    Nixon has been damaged by Defendants' false and fraudulent registration of the AGI House mark in an amount to be determined at trial, including attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**CANCELLATION OF TRADEMARK**
**(15 U.S.C. §1119; 15 U.S.C. §1092; 28 U.S.C. §2201)**

95.    Nixon repeats and realleges each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

96.    This is an action involving a registered mark, and therefore pursuant to 15 U.S.C. §1119, this Court may determine the right to registration of, and order the cancellation of, U.S. Trademark Registration No. 7582685, which is the AGI House mark registered by Yu and allegedly transferred to Plaintiff.

97.    As set forth above, Yu and Yu's LLC employed multiple acts of fraud to register the AGI House mark.

98.    As set forth above, Nixon is the senior user of the AGI House mark and is entitled to priority in use of it.

99.     Absent cancellation, Yu's LLC will continue its fraudulent use of the AGI House mark in violation of the law.

JEREMY NIXON'S COMPLAINT
ACTIVE 717414624v1

100.    Absent cancellation, Defendants will continue to use the AGI House mark to cause Nixon damages as set forth above and to block Nixon's registration and use of the mark

101.    Because Nixon is the senior user and otherwise has priority in the AGI House mark, Nixon is entitled to use and to register the AGI House mark.

102.    Because Nixon has priority to use the AGI House mark, this Court should declare that Nixon is the rightful owner of the AGI House mark.

103.    Because Nixon is the rightful owner of the AGI House mark, this Court should issue an order cancelling Yu's LLC's registration of the AGI House mark.

### THIRD CAUSE OF ACTION
### DECLARATION OF NIXON'S OWNERSHIP OF THE AGI HOUSE MARK
### (15 U.S.C. §1119; 28 U.S.C. §2201)

104.    Nixon repeats and realleges each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

105.    This Court has authority under 28 U.S.C. § 2201 and 15 U.S.C. § 1119 to determine Nixon's right to registration of the AGI House mark, to order the cancellation of Defendants' registration of the AGI House mark, and to otherwise rectify the register with respect to the registrations of any party to this action.

### FOURTH CAUSE OF ACTION
### FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(A))

106.    Nixon repeats and realleges each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

107.    Nixon is the senior user of the trademark "AGI House" as he began using it in commerce long before Defendants began using the mark.

108.    The mark "AGI House" is suggestive of the community and lifestyle Nixon built, which is inherently distinctive and protectable.

CASE NO.

ACTIVE 717414624v1

109.   The mark "AGI House" is descriptive and has acquired a secondary meaning in the hacker and venture capital community as it denotes the house and community founded, operated, and curated by Jeremy Nixon, known for hosting AI researchers, founders, and investors.

110.   Defendants deliberately copied the AGI House mark exactly and precisely in order to obtain the goodwill and other advantages available due to the existing secondary meaning of the mark.

111.   Defendants' copying of the AGI House mark establishes that the mark has secondary meaning.

112.   Because the AGI House mark has a valuable secondary meaning and because Nixon is the senior user, Nixon has a protectable ownership interest in the mark.

113.   Defendants' copying and use of the AGI House mark creates a likelihood of confusion and has caused actual confusion.

114.   Defendants' infringement of Nixon's trademark has caused Nixon damages in an amount to be proven at trial.

115.   Defendants use and have used the AGI House mark in interstate commerce, by advertising events and services available at the Floribunda house.

116.   Defendants' use of the AGI House mark is likely to and has caused confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Nixon.

117.   Defendants' use of the AGI House mark is likely to and has caused confusion, mistake, or deception as to whether Nixon has originated, sponsored, or approved Defendants' services and commercial activities.

118.   Defendants' misappropriation and use of the AGI House mark to falsely suggest that Defendants' services and commercial activities are associated with Nixon has caused and continues to cause damages to Nixon in an amount to be determined at trial.

119.   Defendants' false designation has damaged Nixon in an amount to be proven at trial, but at least in excess of millions of dollars based on lost business opportunities and damage to the community and enterprise.

### FIFTH CAUSE OF ACTION
### CYBERSQUATTING
### (15 U.S.C. §1125 AND §1116)

120.   Nixon repeats and realleges each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

121.   The AGI House mark was distinctive at the time that Yu registered the domain name "agihouse.org" allegedly on or about March 4, 2023.

122.   Nixon had already registered the domain name "agihouse.ai" months before Yu registered "agihouse.org."

123.   The domain name "agihouse.org" that Yu registered and that Defendants' use is identical or confusingly similar to the domain "agihouse.ai" that Nixon registered on October 27, 2022.

124.   Yu copied exactly the domain name Nixon registered on October 27, 2022.

125.   Yu registered or used the agihouse.org domain name with a bad faith intent to profit from Nixon's mark.

126.   For these reasons, Defendants' registration and use of the agihouse.org domain name violates § 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

127.   Unless restrained and enjoined by this Court, Defendants will persist in their use of the agihouse.org domain, causing continuing confusion and irreparable harm and injury to Nixon for which there is no adequate remedy at law.

128.   Pursuant to 15 U.S.C. § 1116, this Court should permanently enjoin Defendants from using the "agihouse.org" domain name.

129.   Pursuant to 15 U.S.C. § 1117, Nixon is entitled to recover from Defendants: (i) Defendants' profits derived from the use of the agihouse.org domain name; (ii) damages Nixon has sustained by Defendants' use of the agihouse.org domain name; (iii)

the costs of this action, including attorneys' fees; and any additional damages this Court may in its discretion find to be just.

130.   In addition, pursuant to 15 U.S.C. § 1118, this Court should issue an order compelling Defendants to transfer ownership and registration of the agihouse.org domain name to Nixon.

<strong>SIXTH CAUSE OF ACTION<br>DEFAMATION</strong>

131.   Nixon repeats and realleges each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

132.   Defendants knowingly made false statements that, among other things, claimed that Nixon did not contribute materially to the AGI House community, that Yu was the AGI House founder, that Nixon was not the creator of AGI House, that Nixon was "the guy use to help manage our slack" and "is no longer with AGI House," among other statements.



1
2
3
4
5
6
7
8
9
10
11
12
13



14   133.   The defamatory statements were made by Yu personally and/or by

15   individuals acting on behalf of Yu's LLC.

16   134.   These statements were harmful because they falsely asserted, among other

17   things, that Nixon was no longer involved in AGI House, that AGI House was solely Yu's

18   enterprise, and that Nixon's AGI House SF location was unrelated to or unaffiliated with

19   the original AGI House. These statements misrepresented the origin of AGI House,

20   undermined Nixon's role as its founder, and falsely portrayed Nixon as an interloper

21   rather than the creator and senior user of the AGI HOUSE name.

22   135.   Yu knew, or at minimum should have known, that these statements were

23   false when he made them. Yu had firsthand knowledge that Nixon conceived, built, and

24   operated AGI House beginning in 2022, that Nixon continued to live and work at the

25   Floribunda House through July 2023, and that Nixon remained the originator and senior

26

user of the AGI House mark. Despite this knowledge, Yu repeated and/or allowed the repetition of these falsehoods without exercising reasonable care to determine their truth.

136.   Upon information and belief, Yu made and disseminated these false statements with malice. He intended to mislead community members, investors, and potential collaborators into believing that Yu alone owned AGI House, in order to damage Nixon's business opportunities and to elevate Yu's competing LLC.

137.   Yu acted deliberately and in conscious disregard of Nixon's rights, entitling Nixon to punitive damages.

138.   Yu published these false statements to individuals within the AI, hacker-house, and venture-capital communities, including actual and potential partners, sponsors, residents, and peers who reasonably understood the statements to be about Nixon.

139.   Upon information and belief, Yu made these statements to harm Nixon's business and reputation because Nixon's continued operation of AGI House, including the AGI House SF location, conflicted with Yu's attempt to seize exclusive control of the AGI House brand and to present himself as its sole founder and owner.

140.   Yu's statements were wrongful, unprivileged, and unjustified. No legal, contractual, or factual basis existed for Yu to make such assertions.

141.   As a direct and proximate result of Yu's false statements, Nixon has suffered and continues to suffer actual harm, including lost business opportunities, confusion among partners and community members, and damage to his reputation and goodwill. Monetary damages alone are insufficient to remedy this continuing harm, and Nixon is entitled to recover actual damages according to proof.

142.   Nixon is informed and believes, and on that basis alleges, that Defendants will continue to publish, endorse, or fail to correct these false statements unless enjoined. For this reason, Nixon seeks injunctive relief in addition to monetary damages.

CASE NO.

ACTIVE 717414624v1

143.    Nixon will suffer great and irreparable injury if injunctive relief is denied, while any harm to Defendants from an injunction requiring them to cease their defamatory conduct or issue corrective statements would be minimal.

144.    Yu's false statements have caused and continue to cause Nixon actual harm in the form of millions of dollars lost business opportunities as well as damage to Nixon's goodwill and reputation.  Accordingly, Nixon is entitled to recover actual damages in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**
**SERVICE MARK AND TRADEMARK INFRINGEMENT UNDER CALIFORNIA LAW**
**(CAL. BUS. & PROF. CODE § 14245)**

145.    Nixon repeats and realleges each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

146.    Defendants' fraudulent registration and unauthorized use of the AGI House mark and trade name in connection with the sale, offering for sale, distribution, or advertising of Defendants' services is likely to cause confusion or mistake or to deceive as to the source or origin of Defendants' services in violation of California Business and Professions Code § 14245.

147.    Due to Defendants' misappropriation and ongoing use of the AGI House mark, consumers are likely to believe that Defendants' services are in some way connected with, approved by, sponsored by, and/or endorsed by Nixon.

148.    Upon information and belief, such infringement has been intentional on the part of Defendants, despite Defendants' knowledge of Nixon's prior rights.

149.    Defendants' use of the AGI House mark has caused and will continue to cause Nixon irreparable harm, including loss of goodwill. Nixon has no adequate remedy at law for Plaintiff's unfair competition.

150.    Nixon is entitled to a judgment enjoining and restraining Defendants from engaging in further acts of unfair competition, including cancellation of Defendants' registration of the AGI House mark and prohibition of Defendants' use of the mark.

## EIGHTH CAUSE OF ACTION
## CONVERSION

151.    Nixon repeats and realleges each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

152.    Under California law, conversion is the wrongful exercise of dominion over the property of another.  There need not be a physical taking.

153.    Nixon is the founder, creator, and owner of the AGI House concept, community, name, and associated goodwill, having originated and operated AGI House beginning in 2021 and having continuously used the AGI House name and designations prior to any involvement by Yu.

154.    Nixon further owned and had the exclusive right to control:

      a.      the AGI HOUSE trade name and associated goodwill;

      b.      the AGI HOUSE mark as the senior user in commerce;

      c.      the AGI House online presence and communications channels created under his direction; and

      d.      the AGI House business opportunity, including the planned AGI House SF location.

155.    Nixon entrusted Yu with limited operational tasks for AGI House, such as event logistics, communications, and administrative support, but never authorized Yu to form a competing entity, to register any AGI House domain name, to apply for a trademark, or to assert ownership or control over AGI House intellectual property or business goodwill.

156.    Despite knowing that Nixon was the originator and owner of AGI House and its associated property and goodwill, Yu wrongfully exercised dominion over Nixon's property interests by:

CASE NO.
JEREMY NIXON'S COMPLAINT

a.      secretly registering the domain agihouse.org using Nixon's AGI HOUSE name;

b.      forming AGI House, LLC with himself as the sole principal and causing that LLC to hold itself out as "AGI House," thereby appropriating Nixon's trade name, brand, and goodwill for Yu's own benefit;

c.      filing a federal trademark application for the AGI House mark in January 2024 in his own name, falsely claiming ownership of the AGI House mark despite full knowledge of Nixon's prior and senior use;

d.      filing a state trademark application for AGI House mark;

e.      using the AGI House brand and goodwill to solicit community members, sponsors, and collaborators; and

f.      blocking or attempting to block Nixon from using his own AGI HOUSE name, including by asserting the mark against him through AGI House, LLC and this lawsuit.

157.   These acts constitute wrongful dominion over Nixon's property, including:

a.      the AGI HOUSE name;

b.      the AGI HOUSE mark;

c.      the AGI House goodwill and reputation;

d.      the AGI House community and online presence; and

e.      the central AGI House business opportunity.

158.   Nixon never consented to Defendants' wrongful retention, assertion of ownership, or use of these assets.

159.   As a direct and proximate result of Defendants' acts of conversion, Nixon has suffered substantial damages, including but not limited to: loss of control over the AGI House name and mark; loss of community, opportunities, and goodwill; diversion of

business and sponsorship opportunities; and reputational and economic injury in an amount to be proven at trial.

160.    Defendants' conduct was intentional, malicious, fraudulent, and oppressive, entitling Nixon to punitive damages under California Civil Code § 3294.

161.    Nixon is further entitled to restitution, disgorgement, and the imposition of a constructive trust over all property, rights, and revenues wrongfully obtained by Defendants through their conversion of Nixon's AGI House assets.

162.    Nixon seeks judgment against Defendants for compensatory damages, punitive damages, equitable relief, costs, and any other relief the Court deems just and proper.

## NINTH CAUSE OF ACTION
## BREACH OF FIDUCIARY OR AGENCY DUTY

163.    Nixon repeats and realleges each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

164.    At all relevant times, Nixon was the founder and owner of the AGI House concept and the originator and senior user of the AGI House mark.

165.    In or about late 2022, Nixon invited Yu to assist with operations and logistics for AGI House, including event organization, communications with residents and invitees, and administrative tasks necessary to run the hacker-house community. Nixon's written to-do lists reflect this decision, including the December 3, 2022 directive to "get rocky on board with NeoGenesis help" and to "create a full event series for AGI house."

166.    By agreeing to perform these functions on Nixon's behalf and doing so in practice, Yu accepted a role as Nixon's agent within the scope of those operations. Nixon reasonably relied on Yu to perform those tasks for the benefit of the AGI House enterprise and subject to Nixon's direction and control.

167.    Under California law, an agent is "one who represents another, called the principal, in dealings with third persons." Cal. Civ. Code § 2295.

168.   An agent is a fiduciary and owes the principal duties of the highest good faith, full disclosure of material facts, reasonable care, and loyalty, including a duty not to compete with the principal or to secretly acquire interests adverse to the principal concerning the subject matter of the agency.

169.   By virtue of the foregoing, Yu owed Nixon fiduciary duties of loyalty, good faith, full disclosure, non-competition, and to refrain from appropriating for himself business opportunities, assets, and goodwill belonging to Nixon in connection with AGI House.

170.   Instead of honoring those duties, Yu secretly undertook to appropriate Nixon's AGI House enterprise and mark for himself.  Among other things, and without Nixon's knowledge or consent, Yu:

    a.    registered the domain name agihouse.org, copying the AGI House domain Nixon had already registered;

    b.    formed AGI House, LLC in or about May 2023, naming himself as the sole principal and causing that entity to hold itself out as "AGI House" despite Nixon's prior creation and use of the name and mark;

    c.    filed a federal trademark application for the AGI HOUSE mark in January 2024 in his own name and later caused Plaintiff AGI House, LLC to assert that registration against Nixon, notwithstanding Yu's knowledge that Nixon was the first and senior user of the AGI HOUSE mark;

    d.    told AGI House stakeholders and members of the AI and venture community that Nixon was no longer involved with AGI House and that Nixon's AGI House SF location was unrelated to AGI House, thereby steering the community and brand goodwill away from Nixon and toward Yu and the LLC.

CASE NO.

171.    These acts constitute breaches of Yu's fiduciary duties as Nixon's agent, including his duties (a) not to compete with Nixon concerning the subject matter of the agency, (b) not to acquire secret adverse interests or secret profits in the AGI House enterprise, and (c) not to use his position and the information and goodwill entrusted to him to appropriate for himself the AGI House business opportunity, mark, and brand.

172.    AGI House, LLC knowingly accepted and benefited from Yu's breaches by taking title to the AGI House LLC entity, using the AGI HOUSE mark, and operating the AGI House business with knowledge of Nixon's prior creation and ownership of the AGI House concept and brand, and is therefore liable as a knowing recipient and constructive trustee of property and opportunities wrongfully diverted from Nixon.

173.    As a direct and proximate result of the foregoing breaches of fiduciary duty, Nixon has suffered and will continue to suffer damages in an amount to be proven at trial, including but not limited to lost business opportunities, loss or dilution of his rights in the AGI HOUSE mark, lost revenue and investment opportunities, and harm to reputation and goodwill.

174.    Equity requires that Yu and AGI House, LLC disgorge all profits unjustly obtained through the appropriation of Nixon's AGI House enterprise, including but not limited to the value of the AGI House, LLC entity, the AGI HOUSE mark and related domain names, and revenues derived from their use, and that a constructive trust be imposed over such property for Nixon's benefit, consistent with California authority requiring fiduciaries who secretly profit or usurp opportunities to account for and hold such gains in trust.

175.    Nixon is entitled to compensatory damages, equitable relief (including constructive trust, disgorgement and assignment of rights in AGI House, LLC and the AGI House mark), pre- and post-judgment interest, and such other relief as the Court deems just and proper.

ACTIVE 717414624v1

**TENTH CAUSE OF ACTION**
**UNFAIR COMPETITION**

176.   Nixon repeats and realleges each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

177.   For the reasons described above, Nixon is the senior user of and has a protectable interest in the AGI House mark.

178.   Defendants' copying and use of the AGI House mark constitutes unfair competition in violation of California Business and Professions Code § 17200 *et seq*., as this use has confused and deceived and is likely to confuse and deceive the public.

179.   Pursuant to Business & Professions Code and other applicable law, Nixon has been injured monetarily by the unlawful, unfair, unscrupulous, and fraudulent practices alleged herein.

180.   Within the relevant time period, Defendants engaged in unfair business practices defined under Section 17200 of the California Business & Professions Code, by engaging in the misconduct described herein including Defendants' unlawful interference with Nixon's business relationships and disparaging statements about Nixon.

181.   The violations of these laws serve as the predicate unlawful and/or unfair acts and practices under Section 17200.

182.   Nixon has been injured as a direct and proximate consequence of these violations of law and legislative policy. Nixon is one of the persons for whose benefit the laws were enacted, and has suffered the very harms those laws were intended to avoid.

183.   As a direct and proximate result of the acts described in this Complaint, Defendants have received and continue to hold improper gains consisting of compensation, investment, and customers received as a result of appropriating the AGI House mark, the AGI House web domain, and Nixon's potential business partners.

184.   Defendants' acts of unfair competition have caused and will continue to cause Nixon irreparable harm, including loss of goodwill. Nixon has no adequate remedy at law for Defendants' unfair competition.

185.   This Court should enter equitable relief against Defendants enjoining and restraining Defendants from engaging in further acts of unfair competition, including cancellation of Defendants' registration of the AGI House mark and prohibition of Defendants' use of the mark.

186.   Nixon is entitled to this equitable relief to ensure Nixon regains the benefits of the AGI House mark, to deter and prevent further violations of law, and to preclude Defendants from profiting from their unlawful behavior.

187.   Defendants' infringement of Nixon's trademark has caused Nixon damages in an amount to be proven at trial.

**ELEVENTH CAUSE OF ACTION**
**COMMON LAW PASSING OFF AND UNFAIR COMPETITION**

188.   Nixon repeats and realleges each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

189.   Defendants' deliberate copying and use of the AGI House mark constitutes passing off and unfair competition in violation of the common law of California.

190.   Defendants' use of the AGI House mark has confused and deceived and is likely to confuse and deceive the public.

191.   Defendants' use of the AGI House mark has caused and will continue to cause Nixon irreparable harm, including loss of goodwill. Nixon has no adequate remedy at law for the damages Defendants' use of the AGI House mark has caused and continues to cause.

192.    On information and belief, Defendants' actions were undertaken intentionally to obtain an unfair advantage over Nixon and in conscious disregard of Nixon's rights, and were malicious, oppressive, and/or fraudulent.

193.   Nixon is entitled to a judgment enjoining and restraining Defendants from engaging in further acts of passing off and unfair competition.

**TWELFTH CAUSE OF ACTION**
**INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC**
**RELATIONS**

194.    Nixon repeats and realleges each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

195.    Nixon was in economic relationships with multiple third parties that likely would have resulted in significant economic benefits to Nixon.  Based on Nixon's years of building relationships and contacts that accrued to AGI House, he had the opportunity to raise tens of millions of dollars in capital for investments.  Further, Nixon had unique access to deal flow of potential investment opportunities by the best AI founders, who started companies worth hundreds of millions and billions of dollars.

196.    Defendants, through their unlawful misappropriation of Nixon's trademark and Internet domain and their false statements about Nixon's exit from AGI House and about the quality, content, and origins of Nixon's services, engaged in wrongful conduct to dissuade third parties from working with Nixon and otherwise to attempt to disrupt relationships between potential business partners and Nixon.  Defendants' conduct made it so Nixon could not raise as significant capital as he otherwise could have, and he could not effectuate deals with potential startups due to Defendants' creation of confusion in the market and poisoning Nixon's reputation and ability to leverage his AGI House brand.

197.    Defendants intended to disrupt Nixon's prospective economic relationships with potential business partners and collaborators or knew that disruption was substantially likely to occur.

198.    Nixon's economic relationships with potential business partners and collaborators were harmed and continue to be harmed by Defendants' conduct.  This includes both limited partners with whom Nixon could work to raise capital as well as founders with whom Nixon could potentially invest.

CASE NO.

199.    This disruption to Nixon's prospective economic relationships caused Nixon financial harm, including damage to his business, revenue, and reputation in the market in excess of millions of dollars.

200.    Defendants' conduct was a substantial factor in causing Nixon's harm.

## PRAYER FOR RELIEF

WHEREFORE, Nixon prays for judgment against Defendants as follows:

1.    For compensatory, incidental, consequential, and actual damages in an amount to be determined, for harms Nixon suffered by Defendants' unlawful conduct, including loss of revenue, lost enterprise value, lost economic opportunity, and harm to Nixon's reputation;

2.    Punitive, exemplary, and any other damages authorized by law;

   a.    For the entry of an injunction against Defendants and all persons acting in concert with them, enjoining Defendants from directly or indirectly

   b.    Engaging in the acts of false or misleading advertising and unfair competition alleged herein, or any other acts that violate 15 U.S.C. § 1125(a) and/or California Business & Professions Code § 17200, et seq.;

   c.    Interfering with Nixon's contracts and relationships with its actual or potential business partners and investors; and

3.    For restitution and/or disgorgement of all money, profits, compensation, or property that Defendants have acquired or will acquire by any wrongful or unlawful means to the detriment of Nixon;

4.    For reasonable attorneys' fees and costs of suit, according to proof, to the extent permitted by law;

5.    For pre- and post-judgment interest on any monetary award at the maximum rate permitted by law; and

6.    For such other and further relief as the Court may deem proper.

ACTIVE 717414624v1

Respectfully submitted,

DATED:  December 17, 2025

By: */s/ Michael Burshteyn*
Michael Burshteyn

**GREENBERG TRAURIG, LLP**

*Attorneys for Plaintiff*
JEREMY NIXON

JEREMY NIXON'S COMPLAINT

ACTIVE 717414624v1